ST. JOSEPH GAS CO. v. BARKER, Atty. Gen., et al.

(District Court, W. D. Missouri, St. Joseph Division. July 28, 1916.)

1. PUBLIC SERVICE COMMISSIONS ☚7—PUBLIC UTILITIES—CONTRACTS.
    Notwithstanding contracts between parties engaged in producing, furnishing, or transporting public utilities, reasonable charges only will be allowed as against the public.

2. GAS ☚14(1)—CHARGES—REASONABLE CHARGES.
    In a proceeding to enjoin compliance with an order of the Public Service Commission of Missouri restraining complainant, which purchased natural gas from another company and distributed such gas to its patrons, from raising the rates of such gas, evidence *held* to show that the rate fixed as a reasonable rate at which complainant should obtain the natural gas was erroneous, and that the producing company was entitled to a rate equal, or nearly equal, to that fixed by the contract between it and complainant.
    [Ed. Note.—For other cases, see Gas, Cent. Dig. § 10.]

3. GAS ☚14(1)—RATES—PUBLIC SERVICE COMMISSION ORDERS—CONTRACTS.
    The contract price per thousand cubic feet at which a producing gas company agreed to furnish natural gas to the second company, which distributed the same to its patrons, is prima facie evidence of the reasonable value of the gas.
    [Ed. Note.—For other cases, see Gas, Cent. Dig. § 10.]

☚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. GAS ⬡⟿14(1)—RATES—REASONABLENESS.

A rate of 60 cents per thousand cubic feet of gas, proposed to be charged by complainant gas company, which purchased gas from a producer of natural gas and distributed it to its patrons, *held* not unreasonably high; complainant being entitled to earn at least 7 per cent. on its investment used and useful in the business.

[Ed. Note.—For other cases, see Gas. Cent. Dig. § 10.]

5. GAS ⬡⟿14(1)—RATES—PUBLIC SERVICE COMMISSION—INJUNCTION.

Complainant purchased natural gas from a producing company under a contract whereby the producing company was to receive two-thirds of the rate charged. The producing company was in the hands of a receiver, and, though its receiver represented he would not demand the full two-thirds of the retail price to which he was entitled under the contract, the court appointing him had taken no action. The rate of 40 cents per thousand cubic feet of gas in force produced for complainant, the distributing company, as great an income as would the proposed rate of 60 cents in case the producing company demanded its full two-thirds. *Held* that, until the question of the abrogation or modification of the contract between complainant and the producing company should be presented to the court appointing the receiver, complainant was not entitled to have enjoined an order of the Missouri Public Service Commission prohibiting an increase of its rates, for such increase might only result in a detriment to its patrons, and not increase complainant's income.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 10.]

6. RECEIVERS ⬡⟿95—AUTHORITY—POWER OF RECEIVER.

A corporate receiver, unless authorized by the court appointing him, is without authority to make any binding agreement as to the modification or abrogation of the contract between the corporation of which he was receiver and a third person.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 173–175.]

In Equity. Bill by the St. Joseph Gas Company against John T. Barker, Attorney General for the State of Missouri, the Public Service Commission of the State of Missouri, William G. Busby and others, members, and others. On application for injunction. Application denied.

Culver & Phillip and William E. Stringfellow, all of St. Joseph, Mo., for plaintiff.

William G. Busby, of Carrollton, Mo., Alex. Z. Patterson and James D. Lindsay, both of Jefferson City, Mo., for the Attorney General and Public Service Commission of Missouri.

Charles L. Faust, of St. Joseph, Mo., for city of St. Joseph.

Before SANBORN, Circuit Judge, and CAMPBELL and BOOTH, District Judges.

• PER CURIAM. The St. Joseph Gas & Manufacturing Company, the immediate predecessor of the plaintiff, was incorporated in 1885, and the St. Joseph Light & Fuel Company in 1890. Each company for a number of years owned and operated in the city of St. Joseph, Mo., a plant for the manufacture and distribution of artificial gas. In 1897 the physical assets of the Light & Fuel Company were sold under foreclosure, and its property was thereafter consolidated with that of the Gas & Manufacturing Company, and the name of the latter company

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was changed to the St. Joseph Gas Company, the plaintiff in the present suit.

This company, a corporation of the state of Missouri, continued to own and operate its gas plant, and up to 1905 was delivering manufactured gas at the rate of $1 per thousand cubic feet. On August 13, 1905, the St. Joseph Gas Company entered into a contract, effective December 1, 1905, with the Kaw Gas Company, a corporation of the state of West Virginia (afterwards merged into the Kansas Natural Gas Company). This contract recited that the Kaw Gas Company was the owner of leases of natural gas producing lands, with gas producing wells developed, in the state of Kansas, and was desirous of marketing its natural gas product. Said contract recited further that the St. Joseph Gas Company was the owner of a system of pipes for the distribution of gas in the city of St. Joseph, Mo., and desirous of securing a supply of natural gas for said city. Said contract provided that the Kaw Gas Company should deliver natural gas to the St. Joseph Gas Company at a point at the city limits of St. Joseph, Mo., for a period of 20 years after December 1, 1905; and the St. Joseph Gas Company agreed to purchase, receive, and pay for the natural gas so delivered, as the gas should be demanded by its consumers, and to distribute the same through its system of pipes in the city of St. Joseph, the quantity of gas purchased to be ascertained by monthly readings of the meters in use by the consumers of such gas. The price was fixed for the consumer at the minimum rate of 30 cents per thousand cubic feet for five years, and at a minimum price of 40 cents per thousand cubic feet thereafter. Twenty cents per thousand cubic feet was to be paid by the St. Joseph Gas Company to the Kaw Gas Company during the period when the price to the consumers should be 30 cents for 1,000 cubic feet. The contract further provided that:

"The price of 20 cents per thousand cubic feet for natural gas to be paid by the St. Joseph Company is based on a general price of 30 cents net per thousand cubic feet to the St. Joseph Company's consumers; but should the St. Joseph Company at any time obtain a higher price for natural gas than 30 cents net per thousand cubic feet for any part or all of the gas purchased from the Kaw Company, then and in that event, the price to be paid the Kaw Company shall be, for all natural gas sold at the higher price, 20 cents per thousand cubic feet, plus two-thirds of the excess price obtained by the St. Joseph Company. In the event that any natural gas is sold at less than 30 cents per thousand cubic feet as hereinafter provided, to the St. Joseph Company's consumers, then the price to be paid the Kaw Company shall be 20 cents per thousand cubic feet less two-thirds of the reduction made by the St. Joseph Company from its regular price of 30 cents per 1,000 cubic feet. The Kaw Company shall receive two-thirds of the amounts collected from the consumers failing to take advantage of the discount allowed for prompt payment."

Pursuant to the terms of said contract, the St. Joseph Gas Company since about February, 1906, has been engaged in selling and distributing natural gas. The St. Joseph Gas Company did not dismantle or abandon its manufactured gas plant, but maintained and improved the same, for the purpose of being ready to supply any deficiency in the supply of natural gas, and at various times during the period after February, 1906, has delivered manufactured gas to its consumers when the supply

of natural gas for any reason has failed. During the years 1912 and 1913, especially, plaintiff was unable to procure an adequate supply of natural gas for its customers, and at various times during those years attempted to meet the deficiency by supplying manufactured gas.

In 1913 notice was given by the St. Joseph Gas Company to the public that, whenever it became necessary to manufacture gas in large quantities to supply the deficiency of natural gas, such manufactured gas would be charged for at the rate of $1 per thousand cubic feet net for the proportionate amount of manufactured gas each patron consumed. In February, 1914, a complaint was filed in the name of certain members of the city council, before the Public Service Commission of Missouri, against the St. Joseph Gas Company, in which it was alleged that the company had no authority to charge $1 per thousand cubic feet for manufactured gas at any price proposed, and prayed the Commission to restrain the charge of $1 per thousand cubic feet for manufactured gas; and by an amended complaint it was further alleged that the $1 rate was unreasonable. The St. Joseph Company in its answer alleged that the rate of $1 for manufactured gas had been the rate in force during the whole period of the Gas Company's life, and was a rate as low as would afford a reasonable return. It alleged further that the 40-cent rate which was then in force for natural gas was insufficient to afford any return upon its investment, and prayed the Commission to make such investigation as should be necessary in order to be advised as to what would be a reasonable rate for natural gas, which would afford the company a reasonable and fair return upon its investment, and to fix such rate. In July, 1914, the Commission issued its order directing the Gas Company to file certain reports, and directing an inspection of the company's books, and an inventory and an appraisal of its property by the accountants and engineers of the Commission.

The report of the engineers was filed May 28, 1915, and that of the accountants June 1, 1915. In the meantime, on account of its financial difficulties, the St. Joseph Gas Company on September 30, 1914, filed with the Commission a proposed new schedule of rates, effective November 1, 1914; the change to be effected by said new schedule being to raise the rate of natural gas from 40 cents to 60 cents per thousand cubic feet. The city of St. Joseph filed its objection to the 60-cent rate, and requested that it be suspended. October 19, 1914, the Commission issued an order suspending said rate to March 1, 1915, and thereafter by subsequent orders continued the suspension until September 1, 1915. The power of the Commission to make further suspension being then exhausted, the suspension was continued by agreement until November 29, 1915.

The three matters, namely, that of the $1 rate for manufactured gas, that of the valuation of the Gas Company's property, and that of the proposed 60-cent rate for natural gas, were, by consent of the parties, heard together as one case, and on November 27, 1915, the Commission handed down its opinion and order. The order, omitting the caption, is as follows:

"These causes being at issue upon complaint and answer filed with the application of the St. Joseph Gas Company for an increase of rates and

243 F.—14

charges and the order of the Commission to ascertain and determine the fair present value of the property of the said St. Joseph Gas Company, due notice thereof having been given, and the three said causes having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the Commission having on the date hereof made and filed its report, containing its findings of facts and conclusions thereon, and having ascertained the fair present value of the said property as therein described, which said report is hereby referred to and made a part hereof: Now, upon the evidence in these cases and after due deliberation, it is—

"Ordered: (1) That the Commission, upon a full consideration of all the evidence in these cases, finds as a fact that the fair present value for determining reasonable and just rates of all the property of the St. Joseph Gas Company as described and set forth in the report of the Commission filed herein and made a part of this order, as of date March 1, 1915, and used and useful by the said company in the service of the public, considering said property and every part thereof as a going concern, and including engineering, supervision, and interest during construction, organization and general expenses, legal expenses, contingent expenses, insurance, general contractor's profit, working capital, and all other elements of value, tangible and intangible, as used in the public service in the manufacture, sale, and distribution of artificial gas, is the sum of $1,673,000, as used in the public service in the sale and distribution of natural gas, the sum of $1,324,000, and as used in the public service in the sale and distribution of natural gas with water gas as a reserve or stand-by service, the sum of $1,620,000, which said sums, respectively, are hereby fixed and determined by the Commission to be the fair present value of said property as of said date, for the purpose of determining reasonable and just rates.

"Ordered: (2) That the complaint of the city council and mayor of the city of St. Joseph be dismissed without prejudice.

"Ordered: (3) That the rates and charges for natural gas as shown in the schedule filed by the said St. Joseph Gas Company with the Commission September 29, 1914, to become effective November 1, 1914, and contained in the following tariff, viz., P. S. C. Mo. No. 1, 1st Revised Sheet No. 1, Canceling P. S. C. Mo. No. 1, Original Sheet No. 1, are unreasonable and unjust, and said company be and it is hereby ordered and required to cancel the same on or before November 29, 1915, and that the said St. Joseph Gas Company shall not put into force and effect the said schedule or any part thereof.

"Ordered: (4) That this order shall take effect on December 15, 1915, and that the secretary of the Commission forthwith serve a certified copy of this order and opinion filed herein on said St. Joseph Gas Company and the mayor and city council of the city of St. Joseph."

In the opinion accompanying its order, the Commission reached the following conclusions, among others: (1) That 26⅔ cents per thousand cubic feet, the rate paid by the St. Joseph Gas Company to the Kaw Natural Gas Company for natural gas delivered at the city limits in St. Joseph, was unreasonably high. (2) That 17 cents or 18 cents per thousand cubic feet was a reasonable rate to be paid for said gas so delivered, instead of 26⅔ cents. (3) That 60 cents per thousand cubic feet, the rate filed by the St. Joseph Gas Company, and proposed to be charged its customers for natural gas, was unreasonably high and unjust. (4) That 40 cents per thousand cubic feet for natural gas delivered by the St. Joseph Gas Company to its customers was not shown to be unreasonably low or unjust to the St. Joseph Gas Company.

On December 19, 1915, a motion for rehearing was filed by the St. Joseph Gas Company with the Public Service Commission of Missouri. January 15, 1916, the motion for rehearing was overruled. Meanwhile, on December 14, 1915, the St. Joseph Gas Company filed a mo-

tion in the district court of Montgomery county (the court controlling the receivers of the Kansas Natural Gas Company), setting forth the decision and order of the Public Service Commission of Missouri, and praying for an order requiring the receivers to supply gas to the St. Joseph Gas Company at 17 cents per thousand cubic feet. February 10, 1916, said district court of Montgomery county, Kan., denied said motion. February 19, 1916, the St. Joseph Gas Company filed a supplemental motion for a rehearing with the Public Service Commission of Missouri, setting forth the proceedings had before the state district court of Montgomery county, Kan. February 23, 1916, the supplemental motion for a rehearing was overruled.

The St. Joseph Gas Company has brought this suit against the Public Service Commission of the state of Missouri and the members thereof, the Attorney General of the state of Missouri, the attorney for said Commission, the prosecuting attorney for Buchanan county, and certain consumers of gas, residents of St. Joseph, Mo., to prevent by the injunction of this court, the enforcement of that portion of the order of the Missouri Public Service Commission, which held that the proposed rate of 60 cents for natural gas was unreasonable and unjust, and ordered and required the Gas Company to cancel the same. The injunction is sought on the grounds that the 40-cent rate for natural gas thus left in effect is unreasonable, noncompensatory, and confiscatory; that the new proposed rate of 60 cents is no more than is essential to avoid the confiscation of the plaintiff's property; that by said order of said Commission the plaintiff has been and is deprived of the equal protection of the law, contrary to the provisions of the Constitution of the United States.

After the commencement of the suit an application for an interlocutory injunction against the enforcement of said portion of said order of the Public Service Commission was made and has been heard, in accordance with the provisions of section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162) as amended (Act March 4, 1913, c. 160, 37 Stat. 1013), 2 U. S. Compiled Statutes 1916, § 1243, p. 1960. The Commission conceded in its opinion and decision that, on the bases of the valuation of the property and of the expenses of its operation which it adopted, the 40-cent rate was confiscatory unless (1) the complainant could and should in the future charge and collect for the free gas furnished to the state, the county, and the city, the proceeds from which would amount to less than $800 per annum; (2) increase the rates charged for natural gas for manufacturing purposes, but the quantity and the possible amounts obtainable by such increases are so small as to be negligible in the determination of the question here at issue; (3) refuse to pay the $4,800 per annum it has been paying for services and salaries of nonresident officers; and (4) reduce the 26⅔ cents per thousand cubic feet it was paying to the Kansas Natural Gas Company for its gas to 17 cents per thousand feet. The complainant asserts that the Commission's bases of valuation and of expense of operation were erroneous in many respects and that the four changes in operating expenses specified above ought not to be made. These assertions, the denials of them by the Commission, and the evidence on these issues have been read and considered. But the evidence con-

vinces that all of them, except the proposed change in the rate to be paid for the gas from 26⅔ cents to 17 cents per thousand cubic feet, are immaterial to the issue of whether or not the 40-cent rate is confiscatory, and to this issue of whether or not the 60-cent rate is unreasonably high. If all these issues were decided in favor of the Commission, the difference they would make in the bases of valuation and erpense of operation would not affect the result which the evidence upon the other issues compels. They are, therefore, here dismissed without discussion, further consideration, or decision.

[1, 2] The question of the reduction of the rate paid for the gas from 26⅔ cents to 17 cents is, however, crucial, and all the evidence upon that subject has been analyzed and has received consideration and reflection. The Commission found that, while the complainant maintains the 40-cent rate and pays 26⅔ cents for its gas, thus receiving for its share of the rate 13⅓ cents per thousand cubic feet, it obtains a return of less than 3 per cent. on the value of its property, but that, if it could obtain for its share of the 40-cent rate 23 cents per thousand cubic feet it would obtain a return of 6.6 per cent. upon the value of its property. The complainant was and is bound by a contract with the Natural Gas Company, which furnishes the gas, to pay to that company two-thirds of the gross amount it receives for the gas it obtains from that company. The Commission invoked the indisputable rule that, notwithstanding contracts between parties engaged in producing, furnishing, or transporting public utilities, reasonable charges only will be allowed as against the public (Steenerson v. Great Northern Ry. Co., 69 Minn. 353, 404, 72 N. W. 713; Chicago & G. T. Ry. Co. v. Wellman, 143 U. S. 339, 345, 12 Sup. Ct. 400, 36 L. Ed. 176), and found that the charge of 26⅔ cents as an operating expense for obtaining natural gas at St. Joseph was an unreasonable charge and 17 cents was a reasonable one. The opinion of the Commission indicates that the facts that the Natural Gas Company was delivering gas chiefly derived from a place in Oklahoma about 240 to 270 miles distant, to Kansas City, Kan., Kansas City, Mo., and Topeka, Lawrence, Leavenworth, and Atchison, Kan., at about 25 cents per thousand cubic feet and receiving only about two-thirds of the proceeds of the sales of this gas, or about 17 cents per thousand cubic feet for the gas delivered, and that St. Joseph was only 40 miles further from the source of supply than Leavenworth, only 70 miles further than Kansas City, Mo., and only 20 miles further than Atchison, Kan., furnished the persuasive and probably the convincing reason and evidence for that conclusion, because (1) the evidence upon the reasonableness of that 25-cent rate to the consumers in the Kansas cities which convinced the Public Commission of Kansas that that rate was confiscatory of the property of the Kansas Natural Gas Company, and the evidence that convinced the members of this court, sitting in the United States District Court of Kansas in Landon, Receiver, v. Public Utilities Commission of that State, that no rate less than 32 cents to the people of those cities would prove sufficient on the basis of two-thirds of the proceeds of the sales, or 21⅓ cents per thousand feet to the Kansas Natural Gas Company to operate the business of that company and to yield it a fair income on the value of its property, because all this evidence has been intro-

duced in this court and has confirmed our conclusion in the Kansas case; and (2) because a higher rate to consumers and a higher rate for the delivery of gas at St. Joseph than at Kansas City and other cities as near or nearer the source of supply is indispensable to yield fair compensation to the Natural Gas Company on the basis of two-thirds to it and one-third to the local gas company.

St. Joseph is the most distant city supplied by the Natural Gas Company, and it is supplied by a pipe line running from one of the trunk lines of the company across the Missouri river for the express purpose of supplying that city. There is, therefore, property of greater value used to supply St. Joseph than is used to supply cities nearer the source of supply. The greater the distance gas is piped the greater is the leakage and the loss of gas thereby, and the greater is the pressure required to send it to its destination. An immense volume of gas is delivered at Kansas City, Kan., and Kansas City, Mo., and a very small volume comparatively at St. Joseph, and the larger the volume delivered at a given place the less the compensatory rate per thousand feet. The argument that the reasonable charge for the delivery of the gas to St. Joseph cannot be greater than 21⅓ cents per thousand cubic feet, the amount that the Gas Company at Atchison would presumptively pay under the 32-cent rate, is not persuasive, because that rate has not been determined to be compensatory anywhere, much less in Atchison (all that this court has declared as to the 32 cent rate is that it was convinced by the evidence in the Landon Case that no rate less than 32 cents would be found to be sufficient to compensate the Natural Gas Company for its gas on the basis of two-thirds of the proceeds to it and one-third to the local company), because the 32-cent rate suggested was not that particular rate to the consumers in each city which the Natural Gas Company supplies, wherever that city is located, but a suggestion of an average rate, and because it is patent that the reasonable rate to the consumers and the reasonable charge for obtaining gas at the city most distant from the source of supply is unavoidably higher per thousand cubic feet than it is at cities of the same size nearer to the source of supply.

[3] There can, therefore, be no doubt that 21⅓ cents per thousand cubic feet is not an unreasonably high charge by the Natural Gas Company for the delivery of natural gas to a city on its lines at an average distance from the main source of supply, that St. Joseph is the most distant city, that the gas is delivered to that city through a special pipe laid across the Missouri river by the Natural Gas Company for its special benefit, and that a reasonable charge for delivery of gas to that city is more than 21⅓ cents. Thus the question becomes how much more. The contract of the parties is that 26⅔ cents shall be paid when the rate is 40 cents, and that is prima facie evidence of the reasonable value of the service. Mr. Hays testified that no amount less than 26⅔ cents per thousand cubic feet would be sufficient to compensate the Natural Gas Company for providing and delivering the natural gas to St. Joseph. Mr. Wyer, an engineer of great learning and experience, prepared elaborate tables of the comparative cost of the delivery of the gas at the various cities served by the Natural Gas Company, and his opinion, as shown by these tables, was that it would

cost the Natural Gas Company 1.52 per cent. of the cost to it of delivering gas at Kansas City to deliver gas at St. Joseph, and the review of the entire testimony upon this subject has satisfied that at least as much as 26⅔ cents per thousand cubic feet is indispensable to fairly compensate the Natural Gas Company for providing and delivering to the complainant natural gas at the city of St. Joseph, and that that amount was not and is not an unreasonably high charge for the St. Joseph Gas Company to make as an operating expense for the purchase and delivery thereof.

[4] Now, assuming that whether the rate at St. Joseph continue at 40 cents or be advanced to 60 cents, in either event the receiver of the Kansas Natural Gas Company is only to take his share of the rate 26⅔ cents as at present fixed by the contract under the 40-cent rate, does the evidence show that an advance of the rate to 60 cents will not result in more than a fair return upon the reasonable value of the property now used and useful in the manufacture and distribution of gas at St. Joseph? It is contended by the defendant that the advance of the rate from 40 to 60 cents will result in such reduction in the use of gas, either in number of consumers or in reduction of quantity used per consumer, or both, as to render the net income of the company no greater at 60 cents than at 40 cents. Of course, if this contention were well founded, then no advantage would accrue to the company by the raise, and hence no injury result by reason of the order of the commission. In support of this contention certain affidavits giving the opinions of persons of more or less experience in such matters, generally based upon results in other places widely scattered, are put in evidence. To what extent, if at all, the conditions in the localities furnishing the data for such opinions are similar to those of St. Joseph does not appear. The evidence establishes that the future sales of gas at St. Joseph even at 40 cents for manufacturing or boiler purposes will be so small as to be negligible, if in fact any such gas be sold at all. It also appears that the lighting business is practically monopolized by the electric light company, and hence revenue from that source need not be considered. This reduces the present consumption to heating and cooking purposes. At present the gas company has about 1,100 customers who use gas for heating purposes, amounting to a consumption of a little more than 69,000,000 cubic feet per annum for such purposes. Other consumers of large quantities are the hotels, restaurants, and gas engine users, etc., using annually a little more than 148,000,000 cubic feet per annum, making a total of 217,000,000 cubic feet. This was about 30 per cent. of the total sales of domestic gas for 1915. Of course the other 70 per cent. must have been consumed for cooking purposes. For cooking and lighting purposes artificial gas at a rate of $1, where natural gas is not obtainable, will compete with other fuel. Therefore it must follow that for cooking purposes natural gas at 60 cents will displace other fuel and hence there should be no falling off in the number of consumers for cooking purposes, and no great reduction in the amount of consumption for such purpose.

Assuming, then, that all the aforementioned conditions except for cooking is lost, it will only result in a loss of about 30 per cent. of the consumption. We believe that the estimate of the witness Abel, that

the probable loss in consumption resulting from the advance to 60 cents will be 25 per cent. is well supported by the evidence. If that be true, then, based upon the total sales for domestic purposes in 1915, amounting to 724,899,500 cubic feet, the sales under the 60-cent rate would be that amount less 25 per cent., or 543,674,625 cubic feet. At 60 cents per thousand this consumption, with income for minimum bills, forfeited discounts, and miscellaneous earnings added, will produce $332,954.78. Based upon the experience of 1915, the annual operating expenses would be $246,841.21, leaving earnings over operating expenses $86,113.57. Taking as a basis of valuation the conclusion of the Commission that the value of the property of the company used and useful in the sale and distribution of natural gas with water gas as a reserve service is $1,620,000, the earnings over operating expenses, as above calculated, would furnish a return upon this valuation of but 5.31 per cent., with no allowance whatever for depreciation of the property. The company is entitled to earnings which will amount to a return of at least 7 per cent. upon the fair value of its property used and useful in the business. Therefore the proposed rate of 60 cents is far from being unreasonably high.

[**5, 6**] But are we justified in finding from the evidence before us, that the receiver of the Kansas Natural Gas Company will not demand and receive two-thirds of the increase in receipts resulting from the advance to 60 cents, as would appear he might do under the contract in force between the Kansas Natural Gas Company and the St. Joseph Company when the receivership intervened in 1912, and under which the receiver and the St. Joseph Company have long been operating? If he should successfully make such insistence, resulting in his securing 40 cents as its portion of the 60-cent rate, the evidence offered by the St. Joseph Gas Company before the Missouri Public Service Commission, and now a part of the evidence before us, establishes that the receipt of the remaining 20 cents by the St. Joseph Company, under the changed conditions which the advance to 60 cents would bring about, would not result in any net gain over the 12⅓ cents received under present conditions. And of course, under such circumstances, as between the utility and the consumer, the just thing to do would be to let the rate remain at 40 cents. It is urged by counsel for the St. Joseph Company that reasons exist why that company is not bound to further abide by its contract with the Kansas Natural Company. But, even so, if it may now disregard the contract, then likewise the receiver of the Kansas Natural Company would be no longer bound to furnish gas at 26⅔ cents, or for that matter at any price. If the receiver should demand a compliance with the terms of the contract, or as an alternative refuse to furnish gas, then the advance to 60 cents would not avail the St. Joseph Company. What the receiver shall do in this regard when the question is presented must depend upon the instructions he shall receive from the district court of Montgomery county, Kan., of which court he is an officer. The evidence discloses certain assurances which the receiver and those assuming to speak in the matter have given the St. Joseph Company, that the receiver will be content with the 26⅔ cents per thousand cubic feet for gas furnished by him, even in case the rate of 60 cents at St. Joseph should

become effective. But, until the question of such modification or abrogation of the contract is presented to the court of which he is an officer, and determined by order of that court, neither the receiver nor any one for him is authorized to make any binding agreements with reference to the same. Therefore we cannot find from the evidence now before us that the St. Joseph Company will realize more than 20 cents per thousand cubic feet for the gas furnished, even if the rate is advanced to 60 cents, and in that event, as we have seen, such advance would not better its condition.

The application for the injunction must therefore be denied without prejudice to another application to this court on the evidence already introduced and other evidence of a substantial change in the situation; and it is so ordered.